THE CITY OF NEWARK (A MUNICIPAL CORPORATION), AND JOHN B. KEENAN, DIRECTOR OF THE DEPARTMENT OF PUBLIC SAFETY, PROSECUTORS, v. CIVIL SERVICE COMMISSION OF THE STATE OF NEW JERSEY, AND JOSEPH A. GARRIGAN AND PETER J. FARLEY, RESPONDENTS.

Submitted October 5, 1943—Decided December 28, 1943.

Before Justices CASE, DONGES and PORTER.

For the prosecutors, *Raymond Schroeder* and *Charles S. Gansler.*

For the respondents, *Frederic M. P. Pearse.*

The opinion of the court was delivered by

CASE, J.  The review is of an order of the Civil Service Commission, entered April 13th, 1943, affecting the status of Peter J. Farley and Joseph A. Garrigan, members of the

uniformed police department of the City of Newark. The policemen had been under disciplinary charges before the department and had been found guilty and fined. They appealed to the Civil Service Commission which, in accordance with its duty, *Newark* v. *Civil Service Commission,* 114 *N. J. L.* 406, proceeded to hold an independent hearing to the end that a determination of the merits be had upon testimony taken before it.

We first consider the contention of prosecutors that the decision of the Civil Service Commission conceded the guilt of but reduced or wiped out the penalty imposed upon the accused men. The Civil Service Commission may affirm or reverse a disciplinary finding by a department head in the public service but may not modify the same. *Maguire* v. *Van Meter,* 121 *N. J. L.* 150. However, while the order of the commission could have been more explicit, it is, in our understanding, a reversal of the findings of guilt pronounced at the close of the departmental hearing. The point is not sustained.

There were separate charges and separate findings against the two men, both in the department and before the Civil Service Commission, but inasmuch as the alleged offenses occurred on the same occasion and were closely related, the hearings, both originally and on the appeal, were consolidated. The acts of alleged misconduct occurred at a complimentary dinner given in honor of a retiring police lieutenant at which there were more than 200 guests, the majority of whom were members of the police department. · John B. Keenan, Director of Public Safety of the City of Newark, and George E. Kaas, Police Commissioner of the same city, were present as invited guests and addressed the assembly. The charges upon which Farley was found guilty at the departmental hearing were limited to his words and acts during the course of Director Keenan's remarks. There were charges of the same nature against Garrigan, but in addition he was charged with interrupting Police Commissioner Kaas while the latter was speaking and of making disparaging remarks to the Commissioner, and it was with respect to the Kaas incident that Garrigan was found guilty in the department.

At the close of the meal the toastmaster introduced a speaker who criticised Director Keenan's methods of managing the police department and particularly his record of shifting a number of older members of the force from their former positions. Keenan, the next speaker, resented the aspersions and gave himself over to a livid outburst wherein he hurled obscene epithets at the audience. His language was deeply insulting, particularly to such of those present as had been disciplined or transferred by him. Farley and Garrigan were of that number. The meeting got quite out of hand; a hubbub ensued; guests rose to their feet; there were catcalls; explosive caps or firecrackers were discharged. The scene was one of confusion. At about that time and while Director Keenan was defending his official acts Farley called out questions as to certain unsolved crimes and as to the reason why the questioner had been penalized. The questions were entirely out of place. But the director, without justification—there can be no justification for filthy, unearned epithets thrown by a high public officer at a general audience—had been insulting, inflammatory and provocative. Of this there can be little doubt, because the director did not take the witness stand before the commission to deny the testimony, which was strongly to that effect. The occasion for Mr. Keenan's presence was doubtless that he was the Director of Public Safety; but he was not there in the performance of his official duty. He undertook, in a social gathering, to vent his spleen in, to say the least, a most unmannerly fashion against those who disagreed with him and to heap vilification upon those who had already been disciplined. Perhaps he, too, was baited, by the preceding speaker, beyond his inclination to resist. But however that may be, the Civil Service Commission came to the conclusion that, having regard for all of the circumstances, the men were not guilty of an infraction of the rules, and our reading of the proofs, supplemented by the weight which we give to the finding of those who saw and heard the witnesses, brings us in unison so far as concerns Farley.

The incident, the truth of which is not in serious dispute, upon which Garrigan was found guilty was quite different.

Commissioner Kaas, who, in addition to his duties as commissioner, was at the time the acting chief of police, was in the midst of felicitous remarks appropriate to the occasion and, referring to his service as the acting chief of police, said that he would himself presently retire, whereupon Garrigan, from the floor of the hall, interrupted the speaker by arising and calling out, "Why the hell don't you get out now?" Garrigan attempts to say in excuse that if he had been permitted to talk further he would have robbed the interruption of its sting. But even with his unsatisfying explanation the incident was clearly an act of insubordination disrespectful to a superior officer and contrary to good order and discipline in the department. We think that the commission erred in reversing as to Garrigan.

Respondents contend that the proceedings against them are a nullity in that the charges were made by "an improper officer;" and the argument grounds in what the brief says are the rules of the Newark police department but which we do not discover in the proofs. It does briefly appear in the proofs that Commissioner Kaas, under the authority of the Director of Public Safety, was temporarily designated, there being no actual chief of police, to be the acting chief of police and that he was acting as the chief of police during the period in question. Our attention is called to no controverting testimony. It was Commissioner Kaas who in his capacity as acting chief of police preferred the charges on which the two policemen were tried both in the department and before the Civil Service Commission. This is not a proceeding in which to try Kaas' title to office. He was unquestionably the acting chief and as such was authorized to lay the charges.

We conclude that the judgment of the Civil Service Commission should be affirmed as to the respondent Farley; and that the judgment of the Civil Service Commission should be reversed and the order of the Director of Public Safety sustained as to the respondent Garrigan; without costs.